Bernard Johnson, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 13, 1982, to Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Richard A. Katz,* for petitioner.

*John T. Kupchinsky,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 7, 1982:

Claimant Bernard Johnson appeals an order of the Unemployment Compensation Board of Review affirming a referee's order which denied the claimant benefits under the Unemployment Compensation Law.[1]

The claimant, formerly a window washer, applied for a job with the Wellsville Group Home, a residential facility for adjudicated juveniles. The Home hired the claimant as a house parent, a role for which

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§751-770.

the claimant had no formal training. After working for two days, the claimant voluntarily quit. The board found that the claimant quit because he was dissatisfied with his work schedule and "because he feared for his safety at work."

By accepting a job, an employee admits that the work is suitable. To prove that an accepted job actually was, or became, so unsuitable that he had a compelling cause for quitting, a claimant must first overcome the presumption of suitability by showing that the unsuitable conditions were the result of employment factors which changed after acceptance or that he was deceived as to, or was reasonably unaware of, the unsuitable conditions when he accepted the employment. *Jones v. Unemployment Compensation Board of Review,* 35 Pa. Commonwealth Ct. 293, 385 A.2d 639 (1978).

The board found that the employer had explained to the claimant the duties he would have and that, at the time of hiring, the employer also had informed the claimant that the facility was understaffed and that the residents had been in other juvenile institutions.

The board found that, before he was hired, the claimant visited the facility and observed "an act of violence involving two of the residents." However, in its brief, the board candidly admits that the claimant did not make that visit to the facility until *after* he had accepted employment.

The board concluded that it could not hold that the conditions and duties of the claimant's employment constituted a necessitous and compelling cause which could, under the law, justify quitting because the claimant was informed of employment conditions when he was hired. However, we must conclude that the findings of fact are not sufficient to support the board's conclusion.

In determining whether or not a voluntary quit is for a necessitous and compelling cause, Section 402 (b)(1) of the Law[2] requires that consideration be given to the applicable factors used in determining if work is suitable. Section 4(t) of the Law,[3] in pertinent part, provides:

In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness, prior training and experience. . . .

Here the board's findings expressly confirmed the claimant's fear for his safety as a cause for quitting. With respect to his awareness, before being hired, of the possibility of physical danger, the board's findings that he was informed concerning the "schedule," the residents' previous status, the understaffing, and about "duties" and "conditions," are findings which are not conclusive on the matter of anticipation of danger.

That hazardous conditions may be hidden to the untrained eye is obvious in a heavy manufacturing context. Training or experience may also be necessary before an employee can appreciate safety hazards which are involved in a social service job, particularly where it includes working with institutionalized juveniles or convicted persons. Because the record shows that the claimant had no experience or training for the job, he may not have been able to know what the employment duties or conditions, such as understaffing, meant in terms of his personal safety. The only evidence on that point of claimant's knowledge appears to have been the testimony of the claimant himself (not necessarily conclusive, of course), that

---

[2] 43 P.S. §802(b)(1).

[3] 43 P.S. §753(t).

he did not know that the job involved using physical force, to restrain juveniles from fighting and to protect himself.

The possibility of a misunderstanding by the referee and the board is suggested by the finding, now admitted to be incorrect, that the claimant's knowledge of potential violence was acquired by observation before being hired.

Accordingly, we must reverse and remand to the board for findings as to whether or not the claimant understood what the conditions of employment meant in terms of his safety and, if he did not understand, to redetermine whether the risk to the claimant's safety constituted a necessitous and compelling cause, under the Law, which justified the claimant's voluntary quit. Of course, the board may remand to the referee for the taking of additional evidence, if necessary, and for findings.

ORDER

Now, October 7, 1982, the order of the Unemployment Compensation Board of Review, Decision No. B-178720-B, dated August 5, 1980, is hereby reversed and this case is remanded to the Board for action consistent with this opinion.